UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT JOHNSON,<br>　　　　　Plaintiff,<br>　　v.<br>SIMPER INVESTMENTS, INC.,<br>　　　　　Defendant. | Case No. 20-cv-01061-HSG<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 43 |

Plaintiff Scott Johnson brought this lawsuit against Defendant Simper Investments, Inc., alleging violations of the Americans with Disabilities Act of 1990 ("ADA") and California's Unruh Civil Rights Act ("Unruh Act"). *See* Dkt. No. 17. Pending before the Court is Defendant's motion for summary judgment, for which briefing is complete. *See* Dkt. Nos. 43 ("Mot."), 45 ("Opp."), and 47 ("Reply"). Having carefully considered the parties' arguments, the Court **DENIES** Defendant's motion.[1]

I. **BACKGROUND**

　　A. **Factual Background**

Plaintiff is a level C-5 quadriplegic who cannot walk, has significant manual dexterity impairments, uses a wheelchair, and has a specially equipped van. Dkt. No. 27 ("SAC") ¶ 1. Plaintiff is a self-described "ADA Tester," which means he "actively looks" for businesses that fail to comply with the ADA "with the goal of hauling those businesses before the courts to pay penalties and be forced to comply with the law." *Id.* ¶ 8. Defendant owns the real property known as the "Main St. Auto Center" located at 1624 – 1652 S. Main Street, Milpitas, California. *See*

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

SAC ¶ 2; Dkt. No. 38 ("Answer") ¶¶ 2-3. AAMCO Transmission and Precision Tune Auto Care are businesses that operate at the Main St. Auto Center. SAC ¶ 9.

As part of his ADA testing effort, Plaintiff went to the Main St. Auto Center on June 4, 2019, October 30, 2019, and November 21, 2019, with the intent of visiting AAMCO Transmission and Precision Tune Auto Care. *See* Dkt. No. 45-1, Declaration of Scott Johnson ("Johnson Decl.") ¶¶ 5-7. Plaintiff alleges that, on those dates, he was denied full and equal access to AAMCO Transmission and Precision Tune Auto Care because they failed to provide wheelchair accessible parking in conformance with ADA requirements. SAC ¶¶ 11, 18. Based on those facts, Plaintiff alleges violations of the ADA and the Unruh Act. *Id.* ¶¶ 31, 34.

Plaintiff alleges that he plans to return to the Main St. Auto Center again to: (1) inquire about the services at AAMCO Transmission and Precision Tune Auto Care once ADA accessible parking is provided there; and (2) confirm that the businesses are complying with the ADA. Johnson Decl. ¶¶ 15-17. He further states that he has a "pattern and practice" of returning to businesses he has sued to ensure ADA compliance, and that he specifically frequents the Milpitas area to identify non-compliant businesses on a "regular and ongoing basis." *Id.* ¶¶ 14-17.

### B. Procedural Background

Plaintiff initiated this lawsuit on February 11, 2020 and filed an amended complaint on May 1, 2020. *See* Dkt. Nos. 1, 18. On October 19, 2020, Defendant filed a motion to dismiss Plaintiff's First Amended Complaint for failure to state a claim. *See* Dkt. No. 23. The Court granted Defendant's motion because Plaintiff's First Amended Complaint failed to identify the names and addresses of the businesses at the Main St. Auto Center that he allegedly tried to visit. *See* Dkt. No. 26 at 2-3. Plaintiff then filed the Second Amended Complaint, which is the operative complaint in this case. Dkt. No. 27. Defendant filed a motion to dismiss the Second Amended Complaint, which the Court denied on June 9, 2021. Dkt. No. 37. Now pending before the Court is Defendant's Motion for Summary Judgment. *See* Dkt. No. 43.

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). If a court finds that there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment. Fed. R. Civ. P. 56(a).

With respect to summary judgment procedure, the moving party always bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102-03.

"If, however, a moving party carries its burden of production, the nonmoving party must

1 produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party
2 "must do more than simply show that there is some metaphysical doubt as to the material facts."
3 *Matsushita Elec.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable
4 particularity the evidence that precludes summary judgment," because the duty of the courts is not
5 to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275,
6 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or
7 defense, courts must enter summary judgment in favor of the movant. *Celotex*, 477 U.S. at 323.

## III. DISCUSSION

Defendant moves for summary judgment on Plaintiff's ADA and Unruh Act causes of action on three grounds. First, Defendant contends that this Court lacks subject matter jurisdiction over Plaintiff's claims because Plaintiff lacks constitutional standing to bring suit. *See* Mot. at 2. Second, Defendant contends that Plaintiff's claims must fail because he has only identified properties where there is no operating business. *See id.* Finally, Defendant argues that Plaintiff's claims fail as a matter of law because the ADA does not require changes or modifications to the facilities at issue here, since they were built before the ADA went into effect in 1991. *See id.* As explained below, the Court is not persuaded by these arguments.

### A. Article III Standing

To establish standing, Plaintiff must demonstrate that he has suffered an injury-in-fact, that the injury is traceable to Defendant's actions, and that the injury can be redressed by a favorable decision. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). And because Plaintiff seeks injunctive relief, he must also demonstrate a "real and immediate threat of repeated injury." *See id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). The elements of standing "must be supported at each stage of the litigation in the same manner as any other essential element of the case." *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002); *see also Johnson v. Jew*, No. 20-CV-08457-EJD, 2021 WL 3621828, at *4 (N.D. Cal. Aug. 16, 2021) ("Even at summary judgment—where Plaintiff's burden of showing standing is greater than at the pleading stage—relatively 'minimal allegations' support ADA standing.") (citing *Wilson v. Kayo Oil Co.*, 563 F.3d 979, 980 (9th Cir. 2009) (per curiam)). The

4

"imminence" requirement is the only element of standing at issue in this case.

Under Ninth Circuit precedent, an ADA plaintiff can demonstrate a likelihood of future injury and therefore satisfy the imminence requirement by showing, at each stage of the proceedings, that he or she "intends to return to a noncompliant accommodation and is therefore likely to reencounter a discriminatory architectural barrier." *Chapman*, 631 F.3d at 950. The plaintiff's motive for returning to the noncompliant accommodation is irrelevant. *C.R. Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1102 (9th Cir. 2017) ("We also conclude that motivation is irrelevant to the question of standing under Title III of the ADA."). The inquiry instead centers on whether the alleged intent to return is "genuine." *Chapman*, 631 F.3d at 953.

Here, Plaintiff claims he will return to the Main St. Auto Center to: (1) inquire about the services at AAMCO Transmission and Precision Tune Auto Care once ADA accessible parking is provided there; and (2) confirm that the businesses are complying with the ADA. Johnson Decl. ¶¶ 14-17. While Plaintiff's purported intent to return to inquire about the business' services is far from self-evident, the Court finds that, at this stage in the proceedings, Plaintiff has demonstrated a sufficient intent to return and seek further access to the businesses to assess their full compliance with the ADA.

Plaintiff is a veteran ADA tester, as proven by Defendant's allegation that "Plaintiff has filed more than 1000 cases in the Northern District of California alone since July of 2018." Dkt. No. 43-1, Declaration of Kenneth D. Simoncini ¶ 5. Plaintiff claims that he has a "pattern and practice" of returning to businesses he has sued to ensure ADA compliance, and that he specifically frequents the Milpitas area to identify non-compliant businesses on a "regular and ongoing basis." Johnson Decl. ¶¶ 14-17. And he has submitted photographic evidence showing that, after initially visiting AAMCO Transmission and Precision Tune Auto Care on June 4, 2019, he returned on October 30, 2019 and November 21, 2019 to further inspect the premises for ADA compliance. *See* Johnson Decl. ¶ 5; Dkt. No. 45-2. Bearing in mind that the Court must view the inferences reasonably drawn from the record in the light most favorable to Plaintiff and may not weigh the evidence or make credibility determinations, the Court finds that these facts support the inference that Plaintiff will return to the Milpitas area and seek access to AAMCO Transmission

and Precision Tune Auto Care to ensure their full compliance with the ADA.

Of course, Defendant sees it differently. Defendant principally relies on *Johnson v. DTBA, LLC*, 424 F. Supp. 3d 657, 663 (N.D. Cal. 2019), in which a district court found that an ADA plaintiff lacked standing after balancing four factors identified by another district court: "(1) the proximity of defendant's business to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." *DTBA, LLC*, 424 F. Supp. 3d at 663. Seizing on that case, Defendant contends that Plaintiff's alleged plan to return to AAMCO Transmission and Precision Tune Auto Care is not sufficiently "concrete" or "definitive" because Plaintiff has not provided information about the proximity between his residence and the businesses, his past patronage of the businesses, or the goods he might buy from them. *See* Mot. at 12.

But none of those allegations are necessary. Whatever the potential merits of the test the *DTBA, LLC* court used, it is not controlling precedent. *See, e.g., Johnson v. Jew*, No. 20-CV-08457-EJD, 2021 WL 3621828, at *6 (N.D. Cal. Aug. 16, 2021) ("[T]he four-factor test in these cases is not a controlling test for assessing Plaintiff's standing."); *Strojnik v. Bakersfield Convention Hotel I, LLC*, 436 F. Supp. 3d 1332, 1343 (E.D. Cal. 2020) ("Since this test was first articulated fifteen years ago . . . the Ninth Circuit has not adopted it despite having confronted the same or similar issue repeatedly"). Here, Plaintiff is not required to prove his past patronage of the businesses or detail the goods he might later buy from them because, when viewed in the light most favorable to Plaintiff, the facts demonstrate his genuine intent to return to assess their full compliance with the ADA. This is sufficient. Defendant's motion for summary judgment for lack of constitutional standing is therefore **DENIED.**

**B.  ADA Merits**

Defendant also contends that Plaintiff's ADA claims fail as a matter of law for two reasons. First, Defendant argues that Plaintiff has only identified properties where there is no operating business, and provides evidence that a building at 1624 Main St. is unoccupied. *See* Mot. at 14. The Court finds this argument meritless. It is undisputed that Defendant owns the real property known as the "Main St. Auto Center," which consists of the buildings located 1624

*through* 1652 S. Main Street, Milpitas, California.  *See* SAC ¶ 2; Dkt. No. 38 ("Answer") ¶¶ 2-3.  And there is also no serious dispute that AAMCO Transmission (1652 S. Main St.) and Precision Tune Auto Care (1630 Main St.), which Plaintiff has identified, are businesses that operate at the Main St. Auto Center.  SAC ¶ 9; Dkt. No. 45, Exs. 6-7.

Defendant's second argument is that the ADA does not require changes or modifications to the buildings at issue here because they were built before the law came into effect in 1991.  *See* Mot. at 15.  Under Title III of the ADA, "existing facilities," can engage in actionable "discrimination" if they fail to remove "architectural barriers" where such removal is "readily achievable."  42 U.S.C. § 12182(b)(2)(A)(iv).  Existing facility means "a facility in existence on any given date, without regard to whether the facility may also be considered newly constructed or altered."  28 C.F.R § 36.104.  And the ADA defines readily achievable as "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).  The ADA does not define exactly how much effort and expense are required for a facility to meet this obligation, so whether removal of an architectural barrier is "readily achievable" is a judgment made on a case-by-case basis, taking into consideration such factors as the size, type, and overall financial resources of the facility, and the nature and cost of the access improvements needed.  *See id.*

Whether an element is an "architectural barrier" is defined, in part, by the ADA Accessibility Guidelines.  *See Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 945 (9th Cir. 2011); *Rush v. Denco Enterprises, Inc.*, 857 F. Supp. 2d 969, 973 (C.D. Cal. 2012).  Promulgated by the U.S Attorney General to implement the provisions of the ADA, the Accessibility Guidelines lay out the technical structural requirements of places of public accommodation.  *See Chapman*, 631 F.3d at 945.  The 1991 ADA Accessibility Guidelines ("1991 Standards") provide, among other things, parking accessibility requirements regarding the designation and signage of parking spaces, and the width and slope level of the parking spaces, access aisles, and passenger loading zones.  *See* 28 C.F.R. Pt. 36, App. D, § 4.6.  In 2010, though, the U.S. Department of Justice published final regulations revising existing ADA regulations and updating the ADA Standards for Accessible Design ("2010 Standards").  The 2010 Standards contain a "safe harbor"

provision that exempts an existing facility's element from its technical requirements if the facility's element has not been altered on or after March 15, 2012 and already complies with the 1991 Standards. 28 C.F.R. § 36.304(d)(2)(i). However, elements in existing facilities that do not comply with the 1991 Standards must be modified to the extent readily achievable to comply with the 2010 Standards. 28 C.F.R. § 36.304(d)(2)(ii)(B).

Here, Plaintiff presents evidence that the designated accessible parking spaces servicing AAMCO Transmission and Precision Tune Auto Care did not fully comply with the 2010 Standards on the dates of his visit because they, among other things, did not display proper signage or striping and had improperly high running and cross slopes. *See* Mot. at 7-8. Defendant appears to argue that the 2010 Standards do not require changes or modifications to the parking lots at AAMCO Transmission and Precision Tune Auto Care because they are facilities built before 1991, have never been altered, and have always complied with the 1991 Standards. *See* Mot. at 17. The Court agrees that Plaintiff fails to adequately explain why the 2010 Standards "safe harbor" provision does not apply here. *See Whitaker v. Franklin Plaza LLC*, No. CV 19-7403 AS, 2021 WL 4353240, at *3 (C.D. Cal. Aug. 6, 2021) ("To rely on the 2010 ADAAG requirements, Plaintiff must demonstrate that that these requirements apply to the alleged barrier."); *Johnson v. Wayside Property, Inc.*, 41 F. Supp. 3d 973, 976 n.3 (E.D. Cal. 2014) ("All architectural and structural elements in a facility are required to comply with the 1991 Standards to the extent that compliance is readily achievable; by contrast, the 2010 standards apply only to elements that have been altered in existing facilities, or that fail to comply with the 1991 Standards, on or after March 15, 2012."). But even if the Court were to accept Defendant's premises, determining whether the facilities complied with the 1991 Standards on the dates of Plaintiff's visit would still require the resolution of genuine issues of material fact. For example, whether the facility's parking space and access aisles displayed proper designation and signage and had curb ramps with proper slope levels under the 1991 Standards and, if so, whether the removal of those barriers would be "readily achievable" are all genuine and material questions of fact. Summary judgment as to Plaintiff's ADA claim is therefore unwarranted and Defendant's motion as to that claim is **DENIED.**

### C. Unruh Act

The Unruh Act provides that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section." Cal. Civ. Code § 51(f). Therefore, because genuine issues of material fact exist as to Plaintiff's ADA claim, Defendant is also not entitled to summary judgment on Plaintiff's Unruh Act claim.

## IV. CONCLUSION

The Court **DENIES** Defendant's motion for summary judgment and **SETS** a telephonic case management conference on October 26, 2021, at 2:00 p.m. All counsel shall use the following dial-in information to access the call:

Dial-In: 888-808-6929;

Passcode: 6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.

The Court further **DIRECTS** the parties to submit by October 19, 2021, a joint case management statement that includes a proposed case schedule with a trial date no more than six months from the date of this Order.

**IT IS SO ORDERED.**

Dated: 10/12/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge